## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| PHILIP MACEY, Individually and on behalf of the Dunn 401(k) Retirement Plan, and on behalf of all the similarly situated participants and beneficiaries of the plan,<br><br>Plaintiff,<br><br>v.<br><br>J.E. DUNN CONSTRUCTION COMPANY; DUNN 401(K) RETIREMENT PLAN COMMITTEE; John and Jane Does 1-30 in their capacities as fiduciaries and members of the Committee,<br><br>Defendants. | Case No. 4:26-cv-00173-RK |

## DEFENDANTS' REPLY SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    The Court Can Consider Defendants' Appendices. ............................................................ 2

    II.   Plaintiff Fails to Establish Any Meaningful Benchmarks. .................................................. 4

    III.  Even Assuming a Meaningful Benchmark, Plaintiff Does Not Allege Material, Sustained Underperformance. ............................................................................................ 8

CONCLUSION ............................................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Cases**                                                                        **Pages**

*Abel v. CMFG Life Ins. Co.*,
No. 3:22-cv-00449, 2024 WL 307489 (W.D. Wisc. Jan. 26, 2024) ........................................... 6

*Al-Saadoon v. Barr*,
973 F.3d 794 (8th Cir. 2020) ......................................................................................................... 2

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ................................................................................................. 2, 7

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
579 F. Supp. 3d 1133 (N.D. Cal. 2022), *aff'd*, 137 F.4th 1015 (9th Cir. 2025) ......................... 5

*Batt v. 3M Co.*,
No. 0:25-cv-03149, 2026 WL 674322 (D. Minn. Mar. 10, 2026) .......................................... 1, 8

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ...................................................................................................... 3, 9

*Dawson v. Brookfield Asset Mgmt. LLC*,
No. 1:25-cv-00852, 2026 WL 835553 (N.D. Ohio Mar. 26, 2026) ......................................... 10

*Enstrom v. SAS Inst.*,
No. 5:24-cv-00105, 2025 WL 685219 (E.D.N.C. Mar. 3, 2025) .............................................. 10

*Fezer v. Lockheed Martin Corp.*,
No. 8:25-cv-00908, 2026 WL 1041276, (D. Md. Apr. 16, 2026) ............................................... 3

*Fitzpatrick v. Neb. Methodist Health Sys., Inc.*,
No. 8:23-cv-00027, 2023 WL 5105362 (D. Neb. Aug. 9, 2023) ................................................ 4

*In re Quest Diagnostics ERISA Litig.*,
No. 24-2866, 2026 WL 1783204 (3d Cir. June 22, 2026) ....................................................... 8, 9

*Kistler v. Stanley Black & Decker, Inc.*,
No. 3:22-cv-00966, 2024 WL 3292543 (D. Conn. July 3, 2024) ............................................. 10

*Luckett v. Wintrust Fin. Corp.*,
No. 1:22-cv-03968, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) ............................................ 6

*Matousek v. MidAm. Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ................................................................................................*passim*

*McGeathy v. Reinalt-Thomas Corp.*,
No. 2:25-cv-01439, 2026 WL 617343 (D. Ariz. Mar. 5, 2026) ................................................. 4

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018).........................................................................................3, 8, 9

*Miller v. Redwood Toxicology Lab'y, Inc.*,
  688 F.3d 928 (8th Cir. 2012)................................................................................................ 3

*Payne v. Hormel Foods Corp.*,
  No. 0:24-cv-00545, 2024 WL 4228613 (D. Minn. Sept. 18, 2024)...................................... 10

*Phillips Cobham Advanced Elec. Sols., Inc.*,
  No. 5:23-cv-03785, 2025 WL 2689268 (N.D. Cal. Sept. 19, 2025) ..............................3, 4, 5, 7

*Snyder v. UnitedHealth Grp., Inc.*,
  No. 0:21-cv-01049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021)......................................... 4

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022)......................................................................................3, 8, 10

*Wildman v. Am. Century Servs., LLC*,
  362 F. Supp. 3d 685 (W.D. Mo. 2019)................................................................................. 8

*Winston v. City of St. Louis*,
  No. 4:24-cv-01390, 2026 WL 497057 (E.D. Miss. Feb. 23, 2026) ..................................... 3

*Zean v. Fairview Health Servs.*,
  858 F.3d 520 (8th Cir. 2017)................................................................................................ 3

<u>**INTRODUCTION**</u>

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (Dkt. 21) ("Opposition") largely ignores binding Eighth Circuit precedent and undisputable facts; this Court should not. To "nudge" his claim that the American Century TDFs underperformed "from possible to plausible," Plaintiff must provide "a sound basis for comparison—a meaningful benchmark." *Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022).[1] He claims that selecting four TDFs based on market prominence and then comparing them to the American Century TDFs using risk-adjusted performance metrics is sufficient to clear this hurdle, Opp. at 1, despite key differences in asset allocation, glide path, investment strategy, and risk profile. Mot. at 5. The Eighth Circuit disagrees: a "meaningful benchmark" means a comparison to "peer-group funds" that "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as the American Century TDFs. *Matousek*, 51 F.4th at 281. This failure alone warrants dismissal.

Plaintiff also needed to allege sustained, material underperformance—"'consistent, ten-year underperformance' that is 'substantial.'" *Batt v. 3M Co.*, No. 0:25-cv-03149, 2026 WL 674322, at *7 (D. Minn. Mar. 10, 2026). While he claims that "Defendants ask this Court to invent" this requirement, Opp. at 1-2, the majority of district courts across the country reject the "underperformance" alleged here—no more than 2.97%, and often far less, during a two-year period—as insufficient to state an imprudence claim as a matter of law. Mot. at 11-14. The cases cited by Plaintiff in support of his position are mischaracterized or from jurisdictions that defer such questions until summary judgment (unlike the Eighth Circuit)—or both. This too requires dismissal.

Plaintiff's various risk-adjusted performance metrics, Opp. at 1, do not save his claim. As

---

[1] Capitalized terms not otherwise defined herein have the same meanings as in Defendants' Suggestions in Support of Motion to Dismiss Plaintiffs' Class Action Complaint (Dkt. 19) ("Motion").

the Ninth Circuit recognized last year, "an ERISA plaintiff cannot make incomparable funds comparable simply by using a ratio" to risk-adjust performance returns in lieu of a meaningful benchmark. *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1025 (9th Cir. 2025). But even if these metrics were relevant, they still do not support a plausible inference of imprudence here. Plaintiff's own comparator, the BlackRock TDFs, performed almost identically to the American Century TDFs on these metrics relative to the other Comparator TDFs. *Compare* App. E (showing that, based on Plaintiff's own data, the BlackRock TDFs underperformed the remaining Comparator TDFs in 470 out of 514 (91.4%) comparisons), *with* Compl. ¶ 68 (alleging that the American Century TDFs underperformed the Comparator TDFs in 500 out of 534 (93.6%) comparisons).[2]

At bottom, Plaintiff's arguments change nothing. The fact remains that the Complaint does not identify a meaningful benchmark or sustained, material underperformance—the Eighth Circuit requires both. Plaintiffs' claims should be dismissed in full with prejudice.

## ARGUMENT

### I. The Court Can Consider Defendants' Appendices.

Plaintiff claims that the Court cannot consider Defendants' Appendices because they are "manufactured tables" that "reference [] materials outside of the Complaint." Opp. at 1. Not so:

- Appendix A (Dkt. 19-2) contains performance data from Appendix A to the Complaint (Dkt. 1-2) that is simply presented more conveniently for comparison;

- Appendix B (Dkt. 19-3) contains asset allocation data for quarter one 2020 that is publicly accessible via Morningstar. Plaintiff alleges asset allocation is one of the "most critical criteria for selecting and retaining" TDFs, Compl. ¶ 50, and the Complaint discusses asset allocation generally and with respect to the American Century TDFs, *id.* ¶¶ 28-37; and

- Appendices C and D (Dkts. 19-4, 19-5) contain performance data for quarter one 2020 and

---

[2] Plaintiff suggests that "Defendants' disregard" of these metrics and "unheeded quarterly reviews is evidence of a flawed process," Opp. at 1, but it is unclear what he is referencing; the Complaint contains zero allegations about Defendants' decision-making process. The Court should disregard this argument, as "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Al-Saadoon v. Barr*, 973 F.3d 794, 804-05 (8th Cir. 2020).

2

year-end 2022 that is publicly accessible via Morningstar. Plaintiff claims he relied on the same performance data in the Complaint, Opp. at 13 n.6, and the Complaint discusses the American Century TDFs' performance during this timeframe. Compl. ¶¶ 65, 68, 75.

The Court may consider these Appendices because they are "necessarily embraced by the complaint." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Specifically, they contain information that is "incorporated by reference or integral to the claim," "subject to judicial notice," and/or a "matter[] of public record." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012); *see also Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022) ("The district court fairly considered the more recent [Morningstar performance] data because it was central to [plaintiff's] claim, publicly available, and judicially noticeable."); *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2020) (fund prospectuses were "embraced by the pleadings"); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (same).

The two cases cited by Plaintiff do not suggest otherwise. Opp. at 1. True, the court in *Phillips Cobham Advanced Elec. Sols., Inc.* did not take judicial notice of exhibits offered for the "primary purpose" of contradicting certain allegations. No. 5:23-cv-03785, 2025 WL 2689268, at *3 (N.D. Cal. Sept. 19, 2025). But there is nothing to contradict here—the Complaint omits asset allocation and performance data (from 2020 onward) for the American Century and Comparator TDFs. Even if there were "clear inconsistencies" between the Complaint and Appendices, "the document[s] control[]" where, as here, they are "embraced by the Complaint." *Winston v. City of St. Louis*, No. 4:24-cv-01390, 2026 WL 497057, at *6 n.3 (E.D. Miss. Feb. 23, 2026).

And the court in *Fezer v. Lockheed Martin Corp.* was not discussing this issue at all, but what was required to plead a meaningful benchmark. No. 8:25-cv-00908, 2026 WL 1041276, at *8 (D. Md. Apr. 16, 2026). While the court in *Fezer* believed a more "granular analysis" of the proffered alternatives was inappropriate at the motion-to-dismiss stage, *id.*, "the Eighth Circuit has set out a stringent examination[,] which includes a detailed look at the composition of comparator

funds, including the type of assets, investment strategies, and risk profiles." *Fitzpatrick v. Neb. Methodist Health Sys., Inc.*, No. 8:23-cv-00027, 2023 WL 5105362, at *7 (D. Neb. Aug. 9, 2023).[3]

Accordingly, the Court can and should consider Defendants' Appendices at this stage.

## II. Plaintiff Fails to Establish Any Meaningful Benchmarks.

Plaintiff's imprudence claim fails because he does not plead a meaningful benchmark, as the Eighth Circuit requires. The Complaint simply says nothing about whether the Comparator TDFs "hold similar securities, have similar strategies, and reflect a similar risk profile" as the American Century TDFs." *Matousek*, 51 F.4th at 281. Absent such facts, there is no "sound basis for comparison." *Id.*; *see also* Mot. at 8-11. Plaintiff's arguments to the contrary are unavailing.

***First***, he points to the District of Arizona's decision in *McGeathy v. Reinalt-Thomas Corp.*, which allowed a challenge to the American Century TDFs to proceed after concluding that the plaintiff had pled a meaningful benchmark. No. 2:25-cv-01439, 2026 WL 617343, at *3 (D. Ariz. Mar. 5, 2026). But that case only confirms that Plaintiff's allegations are inadequate. The plaintiff in *McGeathy* provided the following facts about the American Century TDFs and his comparators: (i) investment "aim"; (ii) "potential rewards"; (iii) "potential risks" and "risk level"; (iv) "glide path"; and (v) "the types of investments they engage in." *Id.* By comparison, Plaintiff here alleges only that the American Century TDFs use a "to" glide path—the rest is a mystery. The reason why is simple. The American Century and Comparator TDFs have "fundamentally different investment strategies and risk preferences," *Phillips*, 2025 WL 2689268, at *2, *5-7, including in asset

---

[3] Plaintiff later cites *Wildman*, *McDonald*, and *Karg* for a similar proposition. Opp. at 6-7. These cases were decided before the Eighth Circuit's seminal decisions in *Davis* and *Matousek*, and are inconsistent with the meaningful benchmark requirement articulated therein. Plaintiff's reliance on *Snyder v. UnitedHealth Grp., Inc.*, No. 0:21-cv-01049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021) is misplaced for a similar reason—it was "decided before the Eighth Circuit's decision in *Matousek*[,] which provides a more-detailed analysis" *Fitzpatrick*, 2023 WL 5105362, at *7 n.8. *Snyder* is also distinguishable; unlike here, the plaintiffs' comparators "had "similar purposes, asset allocations and risk exposure as the [challenged] TDF." *Snyder*, 2021 WL 5745852, at *4.

allocation, glide path, and use of active or passive underlying funds. Mot. at 5.[4]

***Second***, Plaintiff argues that these dissimilarities—which he largely does not dispute—do not matter because all TDFs "rebalance[] assets over time to become less focused on growth . . . and more focused on preservation . . . as the fund approaches and passes the target date" according to "a tight pattern of glide paths across the industry." Opp. at 5.[5] But these "goals and features are common to ***all*** TDFs"—"[t]he argument that all TDFs are meaningful benchmarks cannot survive a motion to dismiss." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1150 (N.D. Cal. 2022) (emphasis added), *aff'd*, 137 F.4th 1015 (9th Cir. 2025); *see also Phillips*, 2025 WL 2689268, at *6 (rejecting "insufficient allegations" that comparators for the American Century TDFs were "meaningful benchmarks" based on "features [] common to most, if not all, [TDFs]").

Plaintiff also claims that these differences do not matter because the American Century TDFs' "own managers compared them to products with label mismatches." Opp. at 5. This characterization is entirely out of context. American Century contrasts the American Century TDFs with an "aggressive competitor"—the American Funds TDFs and a TDF series offered by Fidelity ("Fidelity TDFs")—to illustrate how the American Century TDFs' conservative, risk-conscious investment strategy holds up versus TDFs with aggressive, equity-heavy investment strategies

---

[4] Although Plaintiff claims that the court in *Rubke v. ServiceNow, Inc.*, No. 3:24-cv-01050 (N.D. Cal. Apr. 22, 2025), Dkt. 90, "denied dismissal on this very [American Century] TDF suite under the meaningful-benchmark standard," Opp. at 7, the court actually held that a meaningful benchmark was ***not*** required because the plaintiffs made "direct allegations of process errors" such that the court did not need to infer imprudence. *Rubke*, Dkt. 90 at 8. There are no such allegations here.

[5] Plaintiff criticizes Defendants' description of the risk profiles of the American Century and Comparator TDFs as a matter of opinion, Opp. at 5, but they reflect the divergence in asset allocation. The American Century TDFs have the lowest equity allocation and highest bond allocation for all but one vintage. *See* Appendix B. While Plaintiff downplays these differences as "modest" and "minimal," Opp. at 4, 11-12, the Northern District of California recognized that they "reflect fundamentally different investment strategies and risk preferences," i.e., the American Century TDFs had a "more conservative [asset] allocation." *Phillips*, 2025 WL 2689268, at *6-7.

over a full market cycle (i.e., both upward and downward markets). Indeed, the sources cited in the Complaint (¶ 65 n.11) not only confirm that there are material differences between the American Century TDFs and the American Funds and Fidelity TDFs, but they also render Plaintiff's underperformance claim implausible. They show that the American Century TDFs outperformed the American Funds TDFs—Plaintiff's best-performing comparator in 2018 and 2019—from November 1, 2007 through June 30, 2024 and the Fidelity TDFs from November 1, 2007 through March 31, 2026 based on actual returns and risk-adjusted returns (Sharpe Ratio) while taking less risk and capturing less downside (i.e., losses during market downturns). Exs. 7, 8 at 8-9.

*Third*, Plaintiff suggests market prominence is a substitute for a meaningful benchmark, Opp. at 5-6, but he cites not one case in support. For good reason. "Several courts have found this very allegation insufficient." *Abel v. CMFG Life Ins. Co.*, No. 3:22-cv-00449, 2024 WL 307489, at *5 (W.D. Wisc. Jan. 26, 2024). While Plaintiff tries to distinguish *Abel* as "turn[ing] on concessions [he] does not make," Opp. at 8, the court's decision did not hinge on the fact that there were dissimilarities between the challenged TDFs and comparators. Rather, those key differences simply illustrated further the insufficiency of this allegation. *Abel*, 2024 WL 307489, at *5.

Plaintiff similarly tries to distinguish *Luckett v. Wintrust Fin. Corp.*, No. 1:22-cv-03968, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024), as turning on differences between the challenged TDFs and comparators that do not exist here. Opp. at 8. To the contrary, those same core structural differences—and more—exist here between the American Century and Comparator TDFs. Mot. at 5. Plaintiff also tries to distinguish *Luckett* by pointing to his use of risk-adjusted performance metrics, Opp. at 8-9, but these metrics fall flat, as explained below. *See infra* at pp. 6-9.

*Fourth*, Plaintiff claims that despite key differences between the American Century and his comparators, "all TDFs are constrained by [Modern Portfolio Theory]," and thus, comparing

them using his risk-adjusted performance metrics is "meaningful." Opp. at 6-7, 9-11. His own authority says otherwise. Just last year, the Ninth Circuit affirmed the grant of a motion to dismiss with prejudice, holding that "an ERISA plaintiff cannot make incomparable funds comparable simply by using a ratio" to risk-adjust performance returns. *Anderson*, 137 F.4th at 1025. The Ninth Circuit reasoned that such metrics (like the ones Plaintiff points to here) do not resolve the underlying problem—an improper performance comparison between dissimilar funds (like TDFs with core structural differences). *Id.* Rather, such metrics "only speculate[] that if a fund with a comparable risk profile had followed the trend of other, presumably riskier, funds, it would have generated higher returns," rather than actually identifying comparable alternative funds in the marketplace. *Id.* Accordingly, Plaintiff's scattershot of metrics do not save his claim from dismissal.

Plaintiff's effort to otherwise distinguish holdings that dismissed (or affirmed the dismissal of) similar claims for lack of a meaningful benchmark, Opp. at 7-8, misses the mark. Those cases were not dismissed simply because the plaintiffs "never explained why [their] comparators were comparable." *Id.* at 7. The problem was that the complaints were "missing details" about whether the comparators "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as the challenged funds, *Matousek*, 51 F.4th at 281—just like the Complaint here.

Plaintiff also misrepresents many of these cases. For example, he claims *Phillips* involved only "Morningstar peer-group labels paired with a non-investable S&P index." Opp. at 8. But the plaintiffs there "identif[ied] seven other TDF options that allegedly serve as meaningful benchmarks for the American Century TDFs"—including two of the Comparator TDFs here—which the court rejected due to "significant differences between [them]." *Phillips*, 2025 WL 2689268, at *6-7. Plaintiff also says *Meiners* "involved [a] structurally different investment[], not a target-date-to-target-date comparison." Opp. at 9. He is wrong. *Meiners* rejected a TDF comparison to two

other TDFs. *Meiners*, 898 F.3d at 823-24.

In sum, Plaintiff fails at step one: he does not provide a "sound basis for comparison—a meaningful benchmark." *Matousek*, 51 F.4th at 280. His imprudence claim must be dismissed.

**III.  Even Assuming a Meaningful Benchmark, Plaintiff Does Not Allege Material, Sustained Underperformance.**

Plaintiff's imprudence claim fails for an independent reason: he does not plead sustained, material underperformance. The Complaint instead alleges only that the American Century TDFs underperformed the Comparator TDF by 2.97% at most—and often far less—during two brief snapshots in time before the proposed class period. This is insufficient as a matter of law to support a plausible inference of imprudence. Mot. at 11-15. Plaintiff's arguments to the contrary fail.

*First*, he claims "the DOL is clear that even a 1% drag is significant due to compounding." Opp. at 13. But the Department was referring to the importance of monitoring 401(k) plan fees and expenses, *not* performance returns. Ex. 9 at 5. It is black-letter law that "disappointing short-term losses" do not require fiduciaries to "[p]recipitously sell[] a well-constructed portfolio." *Smith*, 37 F.4th at 1166. Rather, "a fiduciary may – and often does – retain investments through a period of underperformance as part of a long-range investment strategy." *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 707 (W.D. Mo. 2019). That is why only sustained, material underperformance—"'consistent, ten-year underperformance' that is 'substantial'"—can support a plausible imprudence claim. *Batt*, 2026 WL 674322, at *7. As the Third Circuit explained just two days ago, fiduciaries would otherwise be required "to cut every below-average fund" to chase returns, "creat[ing] chaos." *In re Quest Diagnostics ERISA Litig.*, No. 24-2866, 2026 WL 1783204, at *4 (3d Cir. June 22, 2026) ("[m]inor underperformance" during two-year period "does not require immediate change"; only "severe and sustained" underperformance implicates imprudence).

*Second*, Plaintiff argues that he pleads "underperformance across a battery of [] metrics,"

8

not "a single return number." Opp. at 13. But no matter how many alternative metrices he aggregates into a pass/fail test, they do not solve for the fact that the alleged underperformance must be sustained and material to plausibly plead an imprudence claim. Mot. at 11-14. Indeed, his attempt to distill prudence into a quantitative dashboard of metrices calculated over short periods would lead to ill-advised performance chasing and "create chaos." *In re Quest*, 2026 WL 1783204, at *4.

The arbitrary and flawed nature of Plaintiff's comparison is best illustrated by his own comparator, the BlackRock TDFs, which the Complaint calls an "established industry leader[]" and "among the top five most selected options." Compl. ¶ 76. Comparing the BlackRock TDFs to the remaining Comparator TDFs using the same metrics and data in the Complaint and Appendix A thereto reveals that they "underperformed" in 470 out of 514 (91.4%) comparisons. *See* App. E. This is nearly identical to what Plaintiff characterizes as the American Century TDFs' "staggering" 93.6% "metric-miss rate." Opp. 10. In other words, Plaintiff asks this Court to infer imprudence from a test deeming one of his own comparators—an "established industry leader[]" and "among the top five most selected options"—equally as underperforming as the American Century TDFs.[6]

***Third***, Plaintiff claims the alleged underperformance—2.97% at most, and often far less— is "substantial" and there are no "duration requirements" for underperformance. Opp. at 14-15. The majority of courts disagree. Mot. at 11-14. The cases cited by Plaintiff in support of his position do not dictate a different outcome. Many are from jurisdictions that defer such questions until

---

[6] The Complaint also contains no facts from which the Court can determine whether a particular fund's Sharpe Ratio, Sortino Ratio, Batting Average, or Turnover Ratio—four of Plaintiff's six metrics—indicates good, average, or bad performance such that the American Century TDFs' results in 2018 and 2019 "should have . . . captured the attention of a prudent fiduciary." Opp. at 10; *see* Compl. ¶¶ 53-54. Without this frame of reference, the Court is left only with the allegation that the American Century TDFs "underperformed" just 4 of the "37 established [TDF] series" on these metrics over a brief period before the proposed class period. Opp. at 6. This amounts to an argument that Defendants were required to pick the best-performing TDFs, which the Eighth Circuit has repeatedly rejected. *Davis*, 960 F.3d at 486. *Meiners*, 898 F.3d at 823.

9

summary judgment—unlike the Eighth Circuit—and thus, are irrelevant. Opp. at 14-15 (*Carter*, *Fezer*, *Trauernicht*, *Fulton*, *Kistler*, *Sellers*). Others evaded dismissal because they had additional allegations not present here. *Id.* at 13-15 (*Payne*, *Binder*, *Thomson*, *Johnson*, *Kistler*, *Sellers*).

For example, the plaintiffs in *Kistler v. Stanley Black & Decker, Inc.*, No. 3:22-cv-00966, 2024 WL 3292543 (D. Conn. July 3, 2024) relied on three- and five-year trailing returns, but they also "present[ed] data showing relatively consistent underperformance from 2011 through at least 2021." *Id.* at *11. The plaintiff in *Payne v. Hormel Foods Corp.*, No. 0:24-cv-00545, 2024 WL 4228613, at *8 (D. Minn. Sept. 18, 2024) similarly alleged consistent underperformance from 2017 through 2023, plus the fact that the challenged fund "provided lower [returns] than [a] *safer* [fund] offered by the same insurer." *Id.* at *2, *8. By comparison, the Complaint here alleges just two years of immaterial underperformance as compared to entirely dissimilar funds.

***Fourth***, Plaintiff's attempt to distinguish the complaints in *Enstrom* and *Dawson* as relying entirely on "return spread" is inaccurate. Opp. at 14. Just like here, the plaintiffs in *Enstrom* tried to "use a suite of exotic performance metrics" to argue that the challenged TDFs underperformed, which the court rejected. *Enstrom v. SAS Inst.,* No. 5:24-cv-00105, 2025 WL 685219, at *4 (E.D.N.C. Mar. 3, 2025). The plaintiff in *Dawson* likewise pointed to Turnover Ratio in challeng-ing the American Century TDFs—just like here—which the court rejected. *Dawson v. Brookfield Asset Mgmt. LLC*, No. 1:25-cv-00852, 2026 WL 835553, at *19-20 (N.D. Ohio Mar. 26, 2026).

Accordingly, Plaintiff fails at step two: he does not allege sustained, material underperfor-mance. *Smith*, 37 F.4th at 1167. This too warrants dismissal of his imprudence claim.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's claims in full with prejudice.[7]

---

[7] A sentence asking for leave to amend, Opp. at 15, is insufficient. *Matousek*, 51 F.4th at 282-83.

Date: June 24, 2026

Respectfully submitted,

*/s/ Sara A. Fevurly*
Sara A. Fevurly (Mo. Bar No. 69076)
**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, MO 64112
Phone: (816) 983-8262
Fax: (816) 983-8080
Email: sara.fevurly@huschblackwell.com


William J. Delany (admitted *pro hac vice*)
Larry M. Blocho Jr. (admitted *pro hac vice*)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Avenue NW
Suite 1200
Washington, DC 20006
Phone: (202) 861-6643
Fax: (202) 659-4503
Email: wdelany@groom.com
        lblocho@groom.com

*Counsel for Defendants J.E. Dunn Constr. Co. and
the Dunn 401(k) Retirement Plan Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2026, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Sara A. Fevurly*
Sara A. Fevurly